UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS INTERNATIONAL PROPERTY ASSOCIATES,<br>　　Plaintiff,<br><br>v.<br><br>AMERICAN FUNDS DISTRIBUTORS, INC.,<br>　　Defendant/Counterclaimant,<br><br>v.<br><br>TEXAS INTERNATIONAL PROPERTY ASSOCIATES AND JOEY DAUBEN aka JOSEPH G. DAUBEN,<br>　　Counterclaim-Defendants. | §§§§§§§§§§§§§§§§§ | Civil Action No. 3-07-CV-1932-M |

## ORDER

Before the Court is the Motion to Remand, filed by Plaintiff Texas International Property Associates ("TIPA") on December 18, 2007. Having considered the Motion, the response, and the applicable law, for the reasons stated below, the Court is of the opinion that the Motion should be GRANTED.

### BACKGROUND

TIPA moves to remand this case to state court, arguing that no federal question jurisdiction exists. Defendant American Funds Distributors, Inc. ("AFDI") contends that at the heart of the dispute are questions arising under the Lanham Act. It is clear from the face of the Original Petition that TIPA's claim is for a declaratory judgment that TIPA is the rightful owner

of the domain name <americanfnds.com> "under the laws of the State of Texas." AFDI argues that although TIPA's Petition does not mention trademarks or the Lanham Act, it necessarily seeks an adjudication of AFDI's federal trademark rights under the Lanham Act and the federal Anticybersquatting Protection Act ("ACPA"). TIPA argues that even if subject matter jurisdiction exists, AFDI is estopped from removing the case due to its invocation of a contract with a forum selection clause specifying that disputes will be resolved in Texas state courts.

To reduce trademark disputes between domain name registrants and trademark owners, the U.S. Department of Commerce called on the World Intellectual Property Organization ("WIPO") to make recommendations on privatizing the management of the Internet's Domain Name System ("DNS"). *Bord v. Banco De Chile,* 205 F. Supp. 2d 521, 524 (E.D.Va. 2002). The result was the creation of a private, non-profit corporation called the Internet Corporation for Assigned Names and Numbers (ICANN), which controls the accreditation of domain name registrars. To be accredited, registrars must incorporate the Uniform Domain Name Dispute Resolution Policy ("UDRP") into domain name registration agreements. All domain name registrants are contractually obligated to accept the UDRP's terms in order to register a domain name. *Parisi v. Netlearning, Inc.*, 139 F. Supp. 2d 745, 747 (E.D. Va. 2001) (explaining that "the UDRP binds registrants by virtue of their contracts with registrars").

The UDRP applies only to a "small, special class of disputes" that allege abusive registrations of domain names.[1] The domain name registrant is required to submit to a

---

[1] *See* ICANN, Second Staff Report on Implementation Documents for the Uniform Dispute Resolution Policy, at 4.1(c) (Oct. 25, 1999) <http://www.icann.org/udrp/udrp-second-staff-report-24oct99.htm> ("ICANN Second Staff Report").

> [The UDRP] calls for administrative resolution for only a small, special class of disputes. Except in cases involving "abusive registrations" made with bad-faith intent to profit commercially from

mandatory administrative proceeding when a third party invokes that provision. The third party complainant must file a complaint with WIPO and, before an ICANN-approved dispute resolution service provider, assert that three elements are present: (1) registrant's domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; (2) the registrant has no rights or legitimate interests in respect to the domain name; and (3) the domain name has been registered and is being used in bad faith. *Uniform Domain Name Dispute Resolution Policy*, http://www.icann.org/udrp/udrp-policy-24oct99.htm. The dispute resolution provider selects a panel with one to three members, and that panel issues a decision based on the complaint and response, without a hearing. *Id.* The only relief available is the cancellation or transfer of the domain name. *Id.*

The three element test applied by WIPO panels is independent of the Lanham Act and other domestic and foreign trademark laws. *Am. Online Latino, Inc. v. Am. Online, Inc.*, 250 F. Supp. 2d 351, 358 (S.D.N.Y. 2003). Plaintiff cites WIPO panel proceedings that evaluate the first element and reject the application of national trademark laws, explaining that only a prima facie comparison of the disputed domain name with the trademarked name is appropriate, and advocate a "broader notion of confusion" than that found in domestic and foreign trademark laws. Plaintiff's Motion at 11. The UDRP Rules direct panels to decide complaints by considering and applying the UDRP, the Rules, and "any rules and principles of law" they deem applicable. *Uniform Domain Name Dispute Resolution Rules*, http://www.icann.org/udrp/udrp-

---

others' trademarks (e.g., cybersquatting and cyberpiracy), the adopted policy leaves the resolution of disputes to the courts (or arbitrators where agreed by the parties) and calls for registrars not to disturb a registration until those courts decide. The adopted policy establishes a streamlined, inexpensive administrative dispute-resolution procedure intended only for the relatively narrow class of cases of "abusive registrations. . . . The policy relegates all "legitimate" disputes--such as those where both disputants had longstanding trademark rights in the name when it was registered as a domain name--to the courts.

rules-24oct99.htm.  The WIPO panel in this case analyzed the three element test and prior WIPO panel decisions employing that test.

TIPA registered the domain name <americanfnds.com> two and a half years ago with Compana, LLC, a registrar accredited by ICANN, which does business as budgetnames.com. TIPA's Registration Agreement with Compana obligated TIPA to the UDRP.  AFDI, not a party to the Registration Agreement, filed a complaint under the UDRP with WIPO.[2]  WIPO commenced an action on July 20, 2007.  On September 7, 2007, the WIPO panel issued a decision against TIPA and ordered transfer of the registered domain name to AFDI.  On September 28, 2007, TIPA filed suit against AFDI in the Justice of the Peace Court in Dallas County, Texas.  The same day, TIPA sent AFDI and Compana an email demanding that the domain name not be transferred to AFDI prior to entry of a final, non-appealable court order, in accordance with the UDRP.  On November 19, 2007, AFDI removed the case to this Court, asserting federal question jurisdiction under 28 U.S.C. § 1331 based on "the Lanham Act, 15 U.S.C. § 1501, *et seq.,* including but not limited to claims that require adjudication under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)."

## ANALYSIS

A.   Subject Matter Jurisdiction

The jurisdiction of the federal courts is limited.  *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  The removing party has the burden of establishing federal jurisdiction. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).  All doubts and ambiguities

---

[2] The UDRP Complaint filed by AFDI cited the Registration Agreement covering the domain name in asserting that jurisdiction for the administrative proceeding was proper under the ICANN Policy.

concerning the propriety of removal must be resolved against removal and in favor of remand. *See Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The well-pleaded complaint rule directs that for a district court to have jurisdiction in a removal action pursuant to 28 U.S.C. § 1441, "the federal question must be presented by plaintiff's complaint as it stands at the time the petition for removal is filed and the case seeks entry into the federal system. It is insufficient that a federal question has been raised as a matter of defense or as a counterclaim." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 326-27 (5th Cir. 1998)(quoting 14A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d § 3722, at 255-60). In an ordinary case, the plaintiff is the "master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).

However, when a plaintiff brings a declaratory judgment action, the well-pleaded complaint rule instead asks whether a federal question is present in the underlying, coercive cause of action that the declaratory judgment defendant could have brought to enforce the rights as to which the plaintiff seeks declaratory relief. *See Texas International Property Associates v. Grounded Nomads, L.L.C.,* No. 3:07-CV-0835-N (N.D.Tex. Nov. 27, 2007) (Godbey, J.) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 19 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."). This requirement serves to prevent declaratory judgment plaintiffs from evading federal jurisdiction by seeking vague declaratory relief on the basis of state law. *Id; See also Adriatic Marine, L.L.C. v. C & C Boat Works,*

*L.L.C.*, No. 07-2903, 2007 WL 3046104, at *4 (E.D. La. Aug. 30, 2007).  In *Grounded Nomads,* a case in this district, the court found subject matter jurisdiction because TIPA's state court petition "clearly anticipates" suit under federal trademark law.  In this case, TIPA's state court Petition does not refer to any threatened federal court action.  Instead, although not denominated as a declaratory judgment, what TIPA seeks in its Petition in state court is a ruling "that the domain name is the Plaintiff's property and [an order to] prohibit transfer to Defendant."  Plaintiff also seeks damages of five hundred dollars for Defendant's "attempt to hijack the domain name."

Although federal district courts have original jurisdiction over trademarks, that jurisdiction is not exclusive.  28 U.S.C. § 1338(a); 15 U.S.C. § 1121.  Texas state courts have adjudicated disputes very similar to the instant case, involving domain names and claims of trademark owners.  *See Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 809 (Tex. App.—Austin [3d Dist.] 2001, writ denied).  However, because of the nature of Plaintiff's action, the Court's inquiry must focus on the possible causes of action the Defendant could have asserted against the Plaintiff.  Had AFDI brought a cause of action against TIPA, it would have most likely been under the Lanham Act and ACPA.[3]  In fact, AFDI had the option to file such a claim, but chose to institute a UDRP proceeding instead.[4]  Although TIPA's Petition does not identify those possible federal claims, it

---

[3] Distinctive trademark holders may bring lawsuits against domain name holders to force the transfer of rights to the domain names under ACPA.  ACPA makes it illegal to use a domain name that is identical or confusingly similar to the distinctive or famous trademark or domain name of another, if the party is using the domain name at issue with bad faith to profit from its use.

[4] The UDRP Policy explains that to "invoke the policy, a trademark owner should either (a) file a complaint in a court of proper jurisdiction against the domain-name holder (or where appropriate an in-rem action concerning the domain name) or (b) in cases of abusive registration submit a complaint to an approved dispute-resolution service provider."

"asks the court to rule that the domain name is the Plaintiff's property." AFDI's claims to ownership of the domain name are rooted in federal trademark law and federal anticybersquatting law. Therefore, the Court finds that the Defendant's potential action would invoke federal claims, thereby giving this court subject matter jurisdiction over the instant dispute.

B.     Direct-Benefits Estoppel

Although the Court possesses subject matter jurisdiction over this dispute, TIPA maintains that AFDI contractually waived its right to remove the case to federal court and is estopped from so doing. Since this Court received the parties' briefs, Chief Judge Fitzwater of this District has issued an opinion remanding a case with very similar facts. *See Compana LLC v. Mondial Assistance SAS,* No. 3:07-CV-1293-D, 2008 U.S. Dist. LEXIS 4693 (N.D.Tex. January 23, 2008)(Fitzwater, J.). In *Compana*, the court found that the contractual forum selection clause of the registration agreement was binding on the third party that had invoked the UDRP arbitration process. Chief Judge Fitzwater relied on the Fifth Circuit's theory of "direct-benefits estoppel," where a signatory to a contract has the right to enforce a contract provision against a non-signatory if the non-signatory "knowingly exploits the agreement containing the arbitration clause." *Id.* at *11 (citing *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 360 (5th Cir. 2003).

To prevent a party from exercising its right to remove, a forum selection clause must clearly and unequivocally waive the right to remove. *Id.* at *7. A forum selection clause stipulating that a state court shall be the venue for a dispute may constitute a waiver of a defendant's right to remove an action to federal court. *Id.* As in *Compana*, here the Registration

Agreement's forum selection clause clearly and unequivocally requires that suits related to the Agreement "be brought in a Court of The State of Texas, located in Dallas, County, Texas." In contrast to *Compana*, here it was the Registration Agreement, and not the Accreditation Agreement with ICANN, that was specifically cited in AFDI's UDRP complaint and here, in contrast to *Compana*, a decision has been issued by the WIPO panel, in favor of AFDI.

The Court finds persuasive the discussion by Chief Judge Fitzwater which applied the Fifth Circuit's analysis in *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006). In *Compana*, the court held that "there is sufficient case law and reasoning to extend the direct-benefits estoppel theory to a case where the signatory sues the non-signatory and insists on enforcing a forum-selection provision in a contract that the non-signatory did not sign, but from which the non-signatory directly benefited in seeking to arbitrate essentially the same dispute." *Compana*, 2008 U.S. Dist. LEXIS 4693, at *19 (citing *Legacy Wireless Servs. v. Human Capital, LLC*, 314 F.Supp.2d 1045, 1057 (D. Or. 2004). The Court finds that AFDI directly benefited under the Registration Agreement by forcing TIPA into arbitration of the domain-name dispute at issue in the present litigation. The Court also finds that AFDI "knowingly" accepted the benefits of the Registration Agreement by explicitly referring to it as the basis for invoking the UDRP.

AFDI notes that its UDRP complaint included a clause by which AFDI agreed to submit any challenge that TIPA would make to the panel's decision to the jurisdiction of "the appropriate federal court in Carrollton, Texas, where the principle [sic] office of Compana LLC, the registrar of the domain name, is located" in "accordance with Paragraph 3(b)(xiii) of the Rules." AFDI argues that the appropriate federal court is the Northern District of Texas.

Although the Court is not persuaded that this clause would supersede the Registration Agreement's forum selection clause, the Court does not reach that issue.  Paragraph 3(b)(xiii) of the UDRP Rules requires the complainant to submit to the jurisdiction of the courts in at least one specified "Mutual Jurisdiction."  Mutual Jurisdiction is defined separately, and one possible form of mutual jurisdiction is registrar-based jurisdiction, which AFDI selected in its complaint.

The UDRP Rules allow registrar-based jurisdiction; however, there is a limiting clause: "provided the domain-name holder has submitted in its Registration Agreement to that jurisdiction for court adjudication of disputes concerning or arising from the use of the domain name."  UDRP Rule 1.  Here, the Registration Agreement does not bind TIPA to the courts of Compana's location.  Instead, the Registration Agreement specifies that disputes arising from the agreement are to be brought in Texas state courts.  Thus, this Court finds that AFDI's attempt to override the forum selection clause of the Registration Agreement is invalid, because TIPA had not submitted to jurisdiction in the court selected by AFDI in its complaint.  The Court is not aware of any authority suggesting that ICANN does not permit registration agreements to contain mandatory forum selection clauses more restrictive than the UDRP Mutual Jurisdiction clause.  AFDI, by invoking the Registration Agreement containing a forum selection clause, is bound by that agreement.

TIPA seeks recovery of its attorney's fees and costs related to removal under 28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  The Court finds this area of the law to be

new and developing and finds that Defendant did not lack an objectively reasonable basis for seeking removal.  Accordingly, the Court declines to award Plaintiff its attorneys' fees and costs.

### CONCLUSION

Although Plaintiff's Original Petition implicates federal questions, the Defendant received direct benefits from invoking the arbitration provision of the Registration Agreement and is thus equitably estopped from avoiding the forum selection clause of that agreement.  Thus, the Court GRANTS Plaintiff's Motion to Remand, DENIES Plaintiff's request for attorneys' fees and costs, and REMANDS this case to the Justice of the Peace of Dallas County, Texas, Precinct 5-1.  The Clerk shall effectuate the remand according to the usual procedure.

**SO ORDERED.**

**DATED:** April 1, 2008.

_____
**BARBARA M.G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**